W. H. KINDER *v.* SOUTHEASTERN GAS COMPANY

(No. 7974)

Submitted October 24, 1934.  Decided November 13, 1934.

*W. T. Lovins* and *Koontz, Hurlbutt & Revercomb,* for plaintiff in error.

*Peyton, Winters & Hereford,* for defendant in error.

MAXWELL, JUDGE:

The defendant asserts error in a judgment rendered against it in the circuit court of Putnam County, on verdict in favor of the plaintiff for $150.00.

The source of the action lies in the italicized portion of the following paragraph of an oil and gas lease executed September 12, 1928, by the plaintiff, W. H. Kinder, and his wife, to Ray and Foote:

> "Second parties agree to complete a well for oil and gas within twelve months from the date this lease goes into effect, and upon completion of said well, parties of the second part agrees to begin paying gas well Rental on same *and in case well No one is a paying producing gas well and will deliver at least ninety Thousand feet gas in line daily—second parties agrees to locate drill and complete a second well within 24 months or pay gas well rental in lieu of drilling well No 2."* (Italics supplied.)

Through mesne assignments, the lease came into the ownership of Twin States Natural Gas Company May 5, 1930. A preceding assignee had completed a gas well under the lease late in the month of December, 1929. On the 21st of September, 1931, commissioners of the circuit court of Kanawha County sold and assigned the lease to the defendant, Southeastern Gas Company, with all the rights and burdens created and imposed by the lease.

The Twin States Natural Gas Company and the Southeastern Gas Company paid to the plaintiff, without default, the royalty for well No. 1, and, through a period of about twenty-one months (November, 1930, to July, 1932), paid gas well royalty of $75.00 per quarter in lieu of drilling a second well. The aggregate of these payments, $525.00, was paid in pursuance of an election made under the latter part of the above quoted paragraph of the lease by the Twin States Gas Company about the time the initial payment was made.

Verdict and judgment herein were for the last two quarters of the year 1932. The defendant seeks to justify its suspension of payments on the ground that the above quoted and italicized provision of the lease, by its very terms, is contingent upon well number one's delivering into the connecting pipe line at least ninety thousand cubic feet of gas per day, and that this requirement has never been met.

Upon the completion of well No. 1, it had an open flow volume production of 134,400 cubic feet of gas per day. Plaintiff's witnesses testify that in their opinion the well was capable of delivering into the pipe line from ninety to one hundred thousand cubic feet of gas daily. Defendant's witnesses express the opinion that the well has never delivered more than about forty-five thousand cubic feet of gas into the pipe line in one day.

We are of opinion that the contingency of the italicized portion of the lease, *supra*, is that well No. 1, within a reasonable time after its completion, should be capable of delivering at least ninety thousand cubic feet of gas into pipe line daily. Upon the fulfillment of such condition, it became the duty of the lessees or their assigns to drill and complete a second well within twenty-four months, or to pay $75.00 per quarter in lieu of drilling a second well. Since there would be needed an appreciable time to drill and complete a second well, the requirement being that it should be completed within twenty-four months, it became incumbent upon the lessees or their assigns, *ex necessitate,* to make election a sufficient length of time prior to the expiration of the two years to permit the drilling and completion of a well within the two-year period, if they chose to drill.

When requested by the lessor in October, 1930, to take action under the said provision of the lease, the Twin States Natural Gas Company, then owner and operator of the lease, promptly elected to make the quarterly payments in lieu of drilling a second well. Evidently there was no claim made by officials of the Twin States Company that well No. 1, within a reasonable time after its completion, was not capable of delivering ninety thou-.

sand cubic feet of gas daily into the connecting pipe line. The Twin States Natural Gas Company, while it owned and operated the lease, presumably was in possession of all facts in relation to the production of well No. 1. On that basis, it recognized its liability to drill a second well or pay in lieu thereof. The obligation was conceded and the requirements thereof were assumed. The election must stand as made. If there was to be contention by the holder of the lease that well No. 1 was not capable of producing at least ninety thousand cubic feet of gas per day, that matter should have been seasonably raised. The production of the well and the amount of gas which it would then have put into the pipe line daily could have been definitely determined. The amount which at this time it will put into the pipe line is not an element of the equation, because the contingency of the above provision of the lease is not that well No. 1 should continue for an indefinite period to deliver at least ninety thousand cubic feet of gas into the pipe line daily, but that it should do so at some specified time. In the very nature of things, such time should be deemed existent reasonably soon after the completion of well No. 1.

This disposal of the major question renders discussion of secondary matters unnecessary.

The record disclosing no prejudicial error, we are of opinion to affirm the judgment.

*Affirmed.*